**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

**SOUTHERN APPALACHIAN
MOUNTAIN STEWARDS, SIERRA
CLUB, and APPALACHIAN VOICES**

   **Plaintiffs,**

**v.**            **CIVIL ACTION NO. _____**

**A&G COAL CORPORATION,**

   **Defendant.**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL
PENALTIES**

**INTRODUCTION**

1.  This is an action for declaratory judgment, mandatory injunctive relief, and civil

penalties against Defendant A&G Coal Corporation ("A&G") for violations of the Federal Water

Pollution Control Act, 33 U.S.C. § 1251 et seq. ("the Clean Water Act" or "the CWA"), and the

Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. ("SMCRA").

2.  As detailed below, Plaintiffs allege that Defendant discharged and continues to

discharge selenium—a pollutant designated as toxic by the U.S. Environmental Protection

Agency, 40 C.F.R. § 401.15—into waters of the United States without a permit in persistent

violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

3.  Plaintiffs further allege that Defendant's discharges of unlawful quantities of

selenium, as well as its unpermitted discharges of any quantity of selenium, into the waters

adjacent to its mine sites violate the performance standards under SMCRA and the terms and

1

conditions of its surface mining permit.

4.      Prior to commencing this action, Plaintiffs Southern Appalachian Mountain Stewards, Sierra Club, and Appalachian Voices sent a notice of intent to sue to A&G Coal Corporation, as required by law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (Clean Water Act citizens' suit provision), and 30 U.S.C. § 1270 (SMCRA citizens' suit provision).

6.      On February 28, 2012, Plaintiffs gave notice of the violations and its intent to file suit to the Defendant, the United States Environmental Protection Agency ("EPA"), the United States Office of Surface Mining, Reclamation, and Enforcement ("OSMRE"), the Virginia Department of Environmental Quality ("DEQ"), and the Virginia Department of Mining, Minerals and Energy ("DMME"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A).

7.      More than sixty days have passed since notice was served and no state or federal government agency has commenced and diligently prosecuted a civil or criminal action to require compliance with the Clean Water Act or SMCRA.

8.      Moreover, neither EPA nor any agency of the Commonwealth of Virginia commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or comparable state law to redress the violations prior to the issuance of the February 28, 2010, notice letter.

9.      Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the

2

sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District.

10.     Venue in this Division is proper pursuant to W.D. Va. Gen. R. 2(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial Division.

## PARTIES

11.     Defendant A&G Coal Corporation is a Virginia corporation doing business in Wise County, Virginia.

12.     At all relevant times, A&G owned and operated the Kelly Branch Surface Mine in Wise County, Virginia, which is regulated by SMCRA Coal Surface Mining Operation ("CSMO") Permit 1102052. The mine discharges pollutants into waterways from outfalls subject to the effluent limitations of VA/NPDES Permit 0082052.

13.     A&G is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

14.     Plaintiff Southern Appalachian Mountain Stewards ("SAMS") is a Virginia corporation and has approximately thirty active members. SAMS works to prevent and correct harmful economic, environmental and human health effects of coal extraction in Virginia's Wise and Dickenson Counties, and to promote sustainable economic development in the region. SAMS' concerns include the exploration, enjoyment, restoration and protection of surface waters in Southwest Virginia.

15.     Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 15,000 members who

3

reside in Virginia and belong to its Virginia Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out those objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in Virginia.

16.     Plaintiff Appalachian Voices is a nonprofit North Carolina corporation committed to protecting the land, air, and water of the central and southern Appalachian region, focusing on reducing coal's impact on the region. Appalachian Voices has more than 900 members in the Appalachian region, including North Carolina, Virginia and Tennessee, and it maintains a permanent office in Virginia. Its concerns include the protection and restoration of surface waters in Virginia.

17.     Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendant's unlawful discharges of pollutants. Plaintiffs' members fish, swim, observe wildlife, or otherwise use the waters affected by Defendant's discharges and are harmed by the high levels of pollutants that Defendant is discharging in violation of its permits. Plaintiffs' members refrain from swimming, wading, fishing, and/or engaging in other activities in and around the streams affected by Defendant's discharges to avoid exposure to pollutants. Plaintiffs' members are also very concerned about the impacts of pollution from Defendant's discharges on their friends and neighbors and on local wildlife. If Defendant's unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the limits in Defendant's permits.

18.     At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

19.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

20.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

21.     At all times relevant to this complaint, the Commonwealth of Virginia has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of Virginia.  Permits issued under this program are known as "VA/NPDES" permits.

22.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of  . . . an effluent standard or limitation under this chapter."

23.     Section 505(f)(1) of the CWA defines "an effluent standard or limitation" to include "an unlawful act under subsection (a) of Section 301 of this title."  33 U.S.C. § 1365(f)(1).

24.     Section 505(b)(1)(B) of the CWA provides that citizen enforcement may be

Case 2:12-cv-00009-JPJ-PMS   Document 1   Filed 05/03/12   Page 5 of 16   Pageid#: 5

precluded only if the federal government or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with [the particular] standard, limitation, or order [at issue]." 33 U.S.C. § 1365(b)(1)(B) (emphasis added).

25.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

26.     Section 309(d), 33 U.S.C. § 1319(d), provides that any person who violates Section 301, 33 U.S.C. § 1311, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

27.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009. See 40 C.F.R. § 19.4.

28.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

29.     Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") or from an approved state regulatory authority.

30.     At all relevant times, the Commonwealth of Virginia has administered an approved surface mining regulatory program. See 30 C.F.R. § 946.10.

31.     The legislative rules promulgated under the Virginia Surface Coal Mining and Reclamation Act ("VSCMRA") provide that, as a general condition of all surface mining permits issued under the VSCMRA, the permittee must comply with all applicable performance standards.  4 VAC § 25-130-773.17(c).

32.     Among the performance standards mandated by SMCRA and the VSCMRA is that mining activities must be conducted in such a manner so as to "prevent material damage to the hydrologic balance outside the permit area."  30 C.F.R. §§ 816.41(a) and 817.41(a); 4 VAC § 25-130-816.41.

33.     Another performance standard mandated by SMCRA and the VSCMRA is that "[d]ischarges of water from areas disturbed by surface mining activities shall be made in compliance with all applicable State and Federal water quality laws, standards and regulations." 4 VAC § 25-130-816.42; 30 C.F.R. §§ 816.42 and 817.42.

34.     Pursuant to Section 303 of the Clean Water Act, 33 U.S.C. § 1313, Virginia has adopted Water Quality Standards that limit the allowable concentrations of pollutants in the waters of the Commonwealth.  Those standards provide that, for Virginia's surface waters, "[i]nstream water quality shall not be acutely or chronically toxic [except as specifically allowed for mixing zones]."  9 VAC 25-260-140, Section A.  To implement the general prohibition, Virginia's Water Quality Standards include both acute and chronic criteria for selenium.  9 VAC 25-260-140, section B, Table of Parameters.  The acute selenium criterion is 20 μg/L and the chronic criterion is 5.0 μg/L.  These Water Quality Standards are "State and Federal water quality laws, standards and regulations" within the meaning of SMCRA and VSMCRA.

35.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely affected to bring an action in federal court to compel compliance with SMCRA against any

7

"person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

36.     Section 520(b)(1)(B) of SMCRA, 30 U.S.C. § 1270(b)(1)(B), provides that citizen enforcement may be precluded only if the federal government or State "has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the provisions of this chapter, or any rule, regulation, order, or permit issued pursuant to this chapter[.]" (Emphasis added.)

37.     Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

38.     DMME is the agency of the Commonwealth of Virginia that administers the Commonwealth's CWA (for mining activities) and SMCRA programs and issues VA/NPDES and VSCMRA Permits.

## FACTS

39.     In 2010, Virginia DMME issued to A&G SMCRA/CSMO permit number 1102052 and VA/NPDES permit number 0082052.  Both apply to A&G's Kelly Branch Surface Mine.

40.      At all relevant times, A&G has held VA/NPDES Permit Number 0082052 to regulate water pollution from its Kelly Branch Surface Mine.

41.     At all relevant times, A&G has held VSCMRA Permit 1102052 to regulate its Kelly Branch Surface Mine.

42.     VA/NPDES Permit Number 0082052 places limits on the concentrations of various pollutants that A&G can discharge into waterways adjacent to the mine.  Those

8

waterways include Kelly Branch, Callahan Creek and the tributaries of Kelly Branch and of Callahan Creek. Each of those waterways is a navigable water of the United States.

43.     In its application for VA/NPDES permit 0082052, A&G did not disclose that it would discharge selenium. VA/NPDES permit 0082052 regulates various pollutants, but it does not allow A&G to discharge any amount of selenium from its outfalls. There is no other VA/NPDES permit that allows A&G to discharge selenium into Kelly Branch, Callahan Creek and the tributaries of Kelly Branch and of Callahan Creek.

44.     Independent surface water testing by Plaintiff SAMS reveals that A&G is discharging selenium without authorization under the Clean Water Act, which discharges are causing or contributing to violations of Virginia's chronic aquatic life water quality standard for selenium.

45.     SAMS members have taken water samples from three sites located in tributaries to Callahan Creek that drain the Kelly Branch surface mine—sampling sites CC3, SCC4, and SCC5. Sampling site CC3 is located on the westernmost tributary of Kelly Branch, just upstream from where the tributary enters Kelly Branch from the north. Sampling site SCC4 is located on the first tributary to Callahan Creek north of Kelly Branch, just upstream of where the tributary enters Callahan Creek from the East (near a small waterfall). Sampling site SCC5 is in the next tributary north of SCC4, just upstream of where that tributary enters Callahan Creek.

46.     Laboratory analysis of SAMS' water samples performed by Appalachian Laboratories, Inc. reveals that the streams at all three sites exceed Virginia's 5 μg/L chronic aquatic life water quality standard for selenium. <u>See</u> 9 VAC 25-260 § 140.B. Samples taken from site CC3 on June 5, 2011 and June 23, 2011 revealed selenium concentrations of 8.13 and 6.51 μg/L, respectively. Samples taken from site SCC4 on June 5, 2011 and June 29, 2011

revealed selenium concentrations of 6.61 and 5.90 µg/L, respectively. A sample taken from site SCC5 on June 29 revealed a selenium concentration of 6.96 µg/L.

47.     There are no apparent sources of selenium upstream from those sampling sites other than the Kelly Branch Surface Mine.

48.     Pursuant to 4 VAC 25-130 § 842.12, a citizen inspection of certain outfalls at the Kelly Branch Surface Mine was conducted on October 11, 2011. During the inspection, water was sampled from two discharging ponds, Ponds 8A and 11A. Laboratory analysis of those samples revealed selenium concentrations of 13 µg/L at Pond 8A and 7 µg/L at Pond 11A. Those concentrations significantly exceed natural background rates of selenium and indicate that the Kelly Branch Surface Mine is discharging large quantities of selenium into its receiving streams.

49.     On the basis of A&G's pattern of unpermitted selenium discharges and the absence of any evidence of meaningful efforts by A&G to eradicate the cause of the violations, Plaintiffs allege that A&G is in continuing violation of the Clean Water Act and SMCRA.

### *Plaintiffs' 60-Day Notice Letter*

50.     Plaintiffs sent a notice of intent letter ("NOI"), postmarked on February 28, 2012, to A&G notifying it that its discharges of selenium violate the Clean Water Act and SMCRA.

51.     The NOI also notified Defendant of Plaintiffs' intent to sue Defendant for those violations, unless they were abated, at the end of the 60-day period required by statute.

52.     The NOI was sent by certified mail, return receipt requested, to the following persons: James C. Justice II, President of A&G Coal Corp.; Jim Cheng, Secretary of the Virginia Office of the Secretary of Commerce and Trade; Conrad T. Spangler, III, Director of the Virginia Department of Mining, Minerals and Energy; Doug Domenech, Secretary of the Virginia Office of the Secretary of Natural Resources; David K. Paylor, Director of the Virginia Department of

Environmental Quality; Melanie D. Davenport, Director of the Division of Water at the Virginia Department of Environmental Quality; Shawn M. Garvin, Regional Administrator, Region 3, U.S. Environmental Protection Agency; Lisa P. Jackson, Administrator, U.S. Environmental Protection Agency; Ken Salazar, Secretary of the U.S. Department of Interior; Joseph Pizarchik, Director of the U.S. Office of Surface Mining; Earl Bandy, Jr., Field Office Director of the Knoxville Field Office, U.S. Office of Surface Mining; Thomas D. Shope, Regional Director of the Appalachian Regional Office, U.S. Office of Surface Mining; Kenneth T. Cuccinelli II, Attorney General of the Commonwealth of Virginia; and Elsey A. Harris III, Registered Agent for A&G Coal Corporation.

## FIRST CLAIM FOR RELIEF
(Clean Water Act Violations)

53.     Plaintiffs incorporate by reference all preceding allegations.

54.     A&G's discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

55.     A&G has violated, and continues to violate, "an effluent standard or limitation" under Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), by discharging selenium without a permit under the Act.

56.     Section 505(f)(1) defines "an effluent standard or limitation" to include "an unlawful act under subsection (a) of Section 301 of this title."  33 U.S.C. § 1365(f)(1).  Section 301(a), in turn, prohibits "the discharge of any pollutant by any person" except in compliance with the Act's requirements.  33 U.S.C. § 1311(a).  By discharging the pollutant selenium without authorization from a permit under the Act, A&G is in ongoing violation of section

11

301(a).

57.     Each and every selenium discharge without a permit is actionable under section 505(a)(1) of the Clean Water Act.  33 U.S.C. § 1365(a)(1).

58.     SAMS' sampling establishes that A&G has discharged selenium into the tributaries of Kelly Branch and of Callahan Creek.  A&G has discharged selenium into the waters described above at Paragraph 45.Sampling during the October 2011 citizen inspection establishes that A&G has discharged selenium from Ponds 8A and 11A.  As described above, those discharges are continuing.

59.     Unless enjoined, A&G will remain in continuing violation of the Clean Water Act.

60.     On information and belief, Plaintiffs allege that A&G is in continuing violation of the Clean Water Act as a result of its unpermitted selenium discharges because A&G has taken no meaningful action to eradicate the underlying cause of the violations.

61.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), A&G is liable for civil penalties of up to $37,500 per day of violation for its violations of CWA effluent limitations.

### SECOND CLAIM FOR RELIEF
(SMCRA Violations Related to Selenium Discharges)

62.     Plaintiffs incorporate by reference all preceding allegations.

63.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

64.     As discussed above, federal and state regulations under SMCRA include performance standards that (1) prohibit surface mining operations that cause violations of federal

and State water quality laws and standards, (2) prohibit operations from causing material damage to the hydrologic balance outside of the permit area, and (3) require adequate treatment to prevent water pollution.

65.     Under the Virginia surface mining regulations, all performance standards in 4 VAC 25-130 Sections 816.41 through 816.57 are incorporated into each permit. 4 VAC 25-130 § 773.17(c) states that "[e]ach permit issued by the division shall be subject to the following conditions: … [t]he permittee shall comply with the terms and conditions of the permit, all applicable performance standards of the Act, and the requirements of this chapter."  Thus, the violations of the state performance standards identified below are also actionable as violations of the conditions of CSMO permit 1102052.

66.     The federal performance standards under SMCRA require that "[d]ischarges of water from areas disturbed by surface mining activities shall be made in compliance with all applicable State and Federal water quality laws and regulations."  30 C.F.R. § 816.42.

67.     The regulations under the Virginia Program mirror the federal standard by mandating that "[d]ischarges of water from areas disturbed by surface mining activities shall be made in compliance with all applicable State and Federal water quality laws, standards and regulations and with the effluent limitations for coal mining promulgated by the U.S. Environmental Protection Agency set forth in 40 CFR 434."  4 VAC § 25-130-816.42.

68.     A&G's discharges of selenium in excess of 5 μg/l have caused in-stream violations of the Virginia Water Quality Standards.  Discharges of selenium below 5 μg/l contribute to in-stream violations of the Virginia Water Quality Standards.  Thus, A&G's selenium discharges are not in compliance with all Federal water quality statutes and state water quality standards.  Further, discharging the pollutant selenium without a permit is itself a

violation applicable Federal water quality laws.  Therefore, the unpermitted discharge of selenium in any amount is unlawful under SMCRA and VSMCRA regardless of the violations of Virginia Water Quality Standards.

69.     VSMCRA regulations require that "[a]ll surface mining and reclamation activities shall be conducted … to prevent material damage to the hydrologic balance outside the permit area …."  4 VAC § 25-130-816.41(a).  A&G's unpermitted discharges of selenium in excess of Water Quality Standards are causing material damage to the hydrologic balance outside the permit area and, therefore, are violations of this regulation.  Further, A&G is obligated to prevent such material damage pursuant to SMCRA, through treatment if necessary.  A&G has failed to do so.

70.     VSMCRA regulations require that "[s]urface-water quality shall be protected by handling earth materials, ground-water discharges, and runoff in a manner that minimizes the formation of acidic or toxic drainage; prevents, to the extent possible using the best technology currently available, additional contribution of suspended solids to streamflow outside the permit area; and otherwise prevents water pollution."  4 VAC § 25-130-816.41(d)(1).  A&G has failed to implement the required protections against selenium drainage and is in violation of this regulation.  SMCRA imposes an independent obligation to protect water quality, an obligation which is not necessarily relieved through the procurement of a VA/NPDES permit.  A&G has failed to protect water quality in accordance with SMCRA.

71.     VSMCRA regulations require that "Drainage from acid- and toxic-forming materials into surface water and ground water shall be avoided by (i) Identifying and burying and/or treating, when necessary, materials which may adversely affect water quality, or be detrimental to vegetation or to public health and safety if not buried and/or treated, and (ii)

Storing materials in a manner that will protect surface water and ground water by preventing erosion, the formation of polluted runoff, and the infiltration of polluted water." 4 VAC § 25-130-816.41(f). A&G has failed to avoid such drainage from toxic-forming materials by the prescribed methods and it has therefore violated this regulation. This regulation imposes an independent obligation to treat, when necessary, materials which may adversely affect water quality. This obligation is not necessarily relieved by the procurement of a VA/NPDES permit. A&G has failed to meet its treatment obligation and/or other obligations under SMCRA to avoid drainage from acid- and toxic-forming materials into surface water and ground water.

72.     Because those performance standards are also permit conditions by operation of law, A&G is also in violation of the terms and conditions of VSCMRA/CSMO Permit 1102052.

73.     Unless enjoined, A&G will remain in ongoing and continuing violation of SMCRA.

74.     On information and belief, Plaintiffs allege that A&G is in continuing violation of SMCRA and VSMCRA as a result of its unpermitted selenium discharges that have caused or contributed to violations of Virginia Water Quality Standards and because A&G has taken no meaningful action to eradicate the underlying cause of the violations.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this court enter an Order:

(1).     Declaring that Defendant has violated and is in continuing violation of the Clean Water Act and SMCRA and VSMCRA;

(2).     Enjoining Defendant from operating its facilities in such a manner as will result in further violations of the Clean Water Act, SMCRA and VSMCRA;

(3).     Ordering Defendant to immediately obtain a permit for selenium discharges and to

comply with all effluent limitations, monitoring and reporting requirements, and other terms and conditions of the VA/NPDES Permit;

(4).    Ordering Defendant to immediately comply with the terms and conditions of its VSCMRA/CSMO Permit, including implementation of treatment and/or materials handling measures necessary to protect water quality and otherwise comply with SMCRA and VSMCRA;

(5).    Ordering Defendant to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

(6).    Ordering Defendant to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and to restore the environment to its prior uncontaminated condition;

(7).    Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

(8).    Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Isak Howell_____**
ISAK HOWELL (Va. Bar No. 75011)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006

Counsel for Plaintiffs