## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **SOUTHERN APPALACHIAN** | ) | |
| **MOUNTAIN STEWARDS, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:12CV00009 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **A&G COAL CORPORATION,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Benjamin A. Luckett and Isak Howell, Appalachian Mountain Advocates, Lewisburg, West Virginia, for Plaintiffs; Corinne E. Martin, Stites & Harbison, PLLC, Nashville, Tennessee, and W. Blaine Early, III, Stites & Harbison, PLLC, Lexington, Kentucky, for Defendant.*

This civil action arises under the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act ("CWA"), 33 U.S.C.A. §§ 1251–1387 (West 2001 & Supp. 2012), and the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C.A. §§ 1201-1328 (West 2007 & Supp. 2012).  The plaintiffs allege that the defendant coal mining company, which is admittedly discharging selenium from one of its surface mines, is violating the law because its permits do not allow it to discharge that pollutant.  The defendant asserts the so-called permit shield as a defense, arguing that because the permitting agency chose not to include effluent limits for the discharge of selenium in the defendant's CWA permit, compliance with the plain language of its valid permits protects it from liability for selenium

discharges.  In other words, the defendant argues that because it has a valid permit that says nothing about selenium, it can discharge selenium with impunity.  The plaintiffs counter that because the defendant did not disclose the potential for selenium discharge in its permit application, it cannot avail itself of the permit shield.  Both parties have moved for summary judgment.  For the reasons set forth below, I find that the plaintiffs are entitled to relief.


I

After complying with the relevant statutory notice requirements, plaintiffs Southern Appalachian Mountain Stewards, Sierra Club, and Appalachian Voices commenced this action against defendant A&G Coal Corporation ("A&G"), seeking declaratory and injunctive relief and civil penalties.  The plaintiffs contend that A&G is discharging selenium[1] from its Kelly Branch Surface Mine without express authorization to do so, and is thus violating the CWA and SMCRA.[2]

The following undisputed facts are taken from the summary judgment record.

The Kelly Branch Surface Mine is located in Wise County, Virginia, and is owned and operated by A&G.  The mine is regulated by SMCRA Coal Surface

---

[1]   Selenium is a naturally occurring element that may be harmful in high concentrations to aquatic life.  Surface mining operations may expose selenium-bearing earth materials.  *See Sierra Club v. ICG Hazard, LLC*, Civil No. 11-148-GFVT, 2012 WL 4601012, at *1 (E.D. Ky. 2012); *Ohio Valley Envtl. Coal. v. Apogee Coal Co.*, 555 F. Supp. 2d 640, 641-42 (S.D.W. Va. 2008).

[2]   A&G does not challenge the standing of the plaintiffs to bring this action and I find from the allegations of the Complaint that they do have such standing.

Mining Operation Permit 1102052, and the mine discharges pollutants into waterways from outfalls subject to the effluent limitations of Virginia National Pollution Discharge Elimination System ("VA/NPDES") Permit 0082052, issued pursuant to the CWA.  The VA/NPDES permit places limits on the concentrations of certain pollutants that A&G can discharge into waterways adjacent to the mine, including Kelly Branch, Callahan Creek, and the tributaries of Kelly Branch and Callahan Creek.  The VA/NPDES permit does not expressly authorize the discharge of selenium from the Kelly Branch Surface Mine.   The permit includes certain conditions, including the following:

> Any and all product, materials, industrial wastes, and/or wastes resulting from the purchase, sale, mining, extraction, transport, preparation, and/or storage of raw or intermediate materials, final product, by-product or wastes, shall be handled, disposed of, and [sic] and/or stored in such a manner so as not to permit discharge of such product, materials, industrial wastes, and/or other wastes to State waters, except as expressly authorized herein.

(Pls.' Exs. in Supp. Mot. Summ. J., Ex. 12 ¶ (p)(2), ECF No. 57-2.)

When A&G applied for its VA/NPDES Permit, it disclosed to the permitting agency, the Virginia Department of Mining, Minerals, and Energy ("DMME"), that it expected to discharge certain pollutants from its bituminous coal mining operation. Selenium was not among the pollutants A&G disclosed in its application.  According to A&G, it neither knew nor had any reason to believe that it would discharge selenium from the mine.  Water samples taken by both the plaintiffs and A&G, however, reveal that the Kelly Branch Surface Mine is in fact discharging selenium

-3-

from two artificial ponds at the mine site.[3]  The record contains evidence that DMME was generally aware of elevated selenium levels in the geographic area at the time A&G submitted its permit application for the Kelly Branch Surface Mine.  Neither the VA/NPDES permit nor the SMCRA permit for the Kelly Branch Surface Mine make any mention of selenium.

The plaintiffs have moved for summary judgment on both their CWA and SMCRA claims.  As to the CWA claim, the plaintiffs assert that because A&G is discharging selenium without a permit that authorizes it to do so, and because it did not disclose the potential for selenium discharge in its permit application, it is violating the CWA as a matter of law.  In response, A&G argues that because it disclosed those pollutants it knew or had reason to believe it would discharge, and because its permit contains no selenium limits, it is protected by the permit shield and, as a matter of law, is not violating the CWA.  This argument is also the basis for A&G's Motion for Summary Judgment.

Regarding the SMCRA claim, the plaintiffs allege that the undisputed evidence shows that A&G is violating SMCRA by (1) violating state water quality standards, (2) violating the CWA, (3) causing material damage to the hydrologic balance outside its permit area, and (4) failing to install adequate water treatment facilities.

---

[3]  A&G disputes whether the samples were taken in stream and whether they show the presence of selenium in excess of chronic levels, but these factual issues are irrelevant to the applicability of the permit shield defense and to resolution of the plaintiffs' CWA claim.  A&G concedes that it is discharging selenium and that none of its permits expressly allow it to do so.

A&G argues that state water quality standards are not independently enforceable in a citizen suit. A&G further argues that the plaintiffs cannot use SMCRA to enforce an alleged CWA violation where a defense exists to the CWA action because SMCRA's savings clause provides that SMCRA shall not be construed to modify or supersede the CWA. Finally, A&G contends that a factual issue exists with respect to whether the samples cited by the plaintiffs demonstrate violation of in-stream water quality standards.

The cross motions for summary judgment have been fully briefed and orally argued. Following oral argument, A&G moved to supplement the summary judgment record with a letter dated August 8, 1997, purportedly sent from the United States Environmental Protection Agency ("EPA") to the Virginia Division of Mined Land Reclamation ("DMLR"), a division of DMME. According to A&G, the letter indicates that EPA and DMLR policy did not require A&G to test for and disclose selenium because DMLR was routinely analyzing metals from selected mining discharges. The plaintiffs argue that A&G should not be permitted to supplement the record because it has offered no reason for its failure to find and produce this evidence earlier. The plaintiffs further argue that the letter is at best ambiguous and does not strengthen A&G's position with respect to the applicability of the permit shield.

For the following reasons, I will deny A&G's Motion to Supplement Evidence in Support of its Motion for Summary Judgment as well as its Motion for Summary Judgment, and I will grant the plaintiff's Motion for Summary Judgment. I agree with the plaintiffs that the permit shield defense is inapplicable here, and I find that it is unnecessary to resolve the issues surrounding the SMCRA claim.

## II

I will first address A&G's motion to supplement. A court is not required to consider evidence in support of summary judgment that was not submitted prior to the summary judgment hearing. *Orsi v. Kirkwood*, 999 F.2d 86, 91 (4th Cir. 1993) (affirming district court's refusal to consider documents that were presented on the morning of oral argument). Rule 6 of the Federal Rules of Civil Procedure governs extensions of time. Rule 6(b) provides that when a party moves for an extension of time after the prescribed time period for performance of an act has expired, the court may, for good cause, extend the time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good

faith." *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006) (unpublished).  The reason for the delay is the most important factor. *Id.*

Although A&G's motion to supplement is not styled as a motion for an extension of time, I will treat it as such.[4]  A&G filed its motion, seeking to add new evidence in support of its summary judgment motion and in opposition to the plaintiff's summary judgment motion, well after the summary judgment briefing deadlines.  A&G's belated filing of the evidence prejudices the plaintiffs because they will not have the opportunity to depose the pertinent witnesses about the contents of the letter and spreadsheet, the circumstances of their creation, or their distribution.  A&G's argument that this new evidence merely supports its long-asserted permit shield defense is unavailing, because the evidence creates a new contention supporting A&G's claim that it was not required to disclose selenium

---

[4]  A&G argues that I should instead apply Rule 56(e)(1), which states, "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact." Fed. R. Civ. P. 56(e)(1).  A&G did not simply fail to address an assertion of fact in its summary judgment filings.  Rather, A&G gathered new evidence following the discovery and summary judgment deadlines and seeks to add this newly uncovered evidence, never before seen by the plaintiffs, to the summary judgment record.  Therefore, I find that Rule 56(e) is not applicable.  Even if Rule 56(e) applied here, that rule also gives me discretion to consider the fact in question undisputed for purposes of the summary judgment motion or to issue any other appropriate order. *See* Fed. R. Civ. P. 56(e)(2)-(4).  For the reasons discussed with respect to Rule 6(e), I am not inclined to give A&G any further opportunity to address the agency's permit application requirements and will decline A&G's request for relief pursuant to Rule 56(e)(1).

discharges in its permit application.  As for the length of the delay and its impact on the proceedings, A&G filed its motion to supplement the record more than two months after the plaintiffs placed the permit application instructions in issue by discussing them in their brief in support of their motion for summary judgment. A&G then had ample opportunity to ask agency representatives about the permit application requirements.  Were I to grant the motion to supplement, it would be necessary to reopen discovery and allow for additional proceedings to provide the plaintiffs with an adequate opportunity to address the new evidence.  This would result in significant additional litigation expense to the parties.

A&G has offered no reason why it could not have obtained this evidence during discovery or why it waited until after oral argument to contact DMLR to inquire about the agency's selenium disclosure policy for permit applications. A&G's failure to contact the agency prior to filing its summary judgment motion and briefs is inexplicable.  While there is no clear evidence that A&G's motion to supplement was made in bad faith, there appears to have been no good reason for A&G's delay.  Consideration of the applicable factors leads me to conclude that A&G has not established the requisite basis for granting its motion to supplement the record.

Moreover, the admissibility of the newly proffered evidence is questionable. "Only evidence that would be admissible at trial may be considered for summary

judgment purposes." *Hunter v. Prince George's Cnty., Md.*, 36 F. App'x 103, 106 (4th Cir. 2002) (unpublished). "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." *Md. Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1251 (4th Cir.1991). The plaintiffs have not objected to the admissibility of the 1997 letter and attached spreadsheet of purported sampling data on hearsay grounds; nevertheless, the letter and spreadsheet appear to be inadmissible hearsay, and A&G has offered no argument as to why this evidence would be admissible at trial. The letter appears to be an exchange between representatives of two agencies who are not parties to this case, and A&G seeks to have the letter admitted for the truth of the matters asserted regarding agency sampling and permit application disclosure requirements.

Even if the letter were admissible under a hearsay exception, the relevance of the letter is doubtful. A&G does not contend that it ever received the letter or knew of the policy discussed therein. A&G admits that its initial permit application was submitted in 2000, three years after the date of the subject letter, and that the permit it now possesses was issued following a renewal application it submitted in 2009, twelve years after the date of the letter. Thus, the applicability of the letter to A&G's particular permit applications is unclear. Additionally, the letter instructs DMLR that if it plans to use its own metal analyses to satisfy individual companies' permit application disclosure obligations, it should so

indicate in the application or the instructions for completing the application.  The application submitted by A&G and the instructions thereto do not have any such indication.  Therefore, to assume that the policy discussed in this letter applied to A&G's application would be speculative.  Finally, the relevance of the spreadsheet attached to the 1997 letter is not immediately apparent.  At most, the spreadsheet indicates that DMLR was aware in 2004 that two out of 17 mines tested were discharging selenium.  The Kelly Branch Surface Mine is not one of the 17 mines listed on the spreadsheet.  Even if this data were admissible and interpreted as A&G suggests, it would be difficult to infer from the spreadsheet that DMME somehow knew based on this data that the Kelly Branch Surface Mine would discharge selenium.

For these reasons I will deny A&G's motion to supplement the record because A&G has not shown excusable neglect, and because the newly proffered evidence is at best unpersuasive and at worst inadmissible and irrelevant.


III

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(a).  In this case, the undisputed material facts warrant partial summary judgment for the plaintiffs.

-10-

The CWA broadly bans "the discharge of any pollutant by any person," subject to some exceptions. 33 U.S.C.A. § 1311(a). The "discharge of a pollutant" includes "any addition of any pollutant to navigable waters from any point source." 33 U.S.C.A. § 1362(12). The term "pollutant" includes "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C.A. §1362(6).

The discharge of pollutants is not uncommon in the mining industry, however, and mining companies can apply for permits that will allow them to discharge pollutants in limited amounts. *See* 33 U.S.C.A. § 1342; *W. Va. Highlands Conservancy, Inc. v. Huffman*, 625 F.3d 159, 162, 166 (4th Cir. 2010); *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 456 (4th Cir. 2008). The CWA's permit program, the National Pollution Discharge Elimination System ("NPDES"), is generally administered by the federal EPA, but the EPA has delegated to a number of states, including Virginia, the authority to run their own NPDES permit programs. *W. Va. Highlands Conservancy*, 625 F.3d at 162; *see* 33 U.S.C.A. § 1342 (a)-(c). In Virginia, DMME is the agency that issues CWA and SMCRA permits for coal mining operations.

NPDES permits limit the amounts of certain pollutants that a permit holder can discharge.  These limits are known as effluent limits.  A permit holder need not comply with water quality standards that measure the levels of pollutants in the receiving waterway.  Rather, under the CWA, permit holders need only ensure that they do not discharge pollutants in amounts greater than the effluent limits specified in their permits, and that they comply with various monitoring, testing, and reporting requirements.  *See generally Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 268 F.3d 255, 264-66 (4th Cir. 2001).  The CWA contains a shield provision, which indicates that a permit holder complies with the CWA if it complies with its NPDES permit.  33 U.S.C.A. § 1342(k); *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 12 F.3d 353, 357 (2d Cir. 1993).

In *Piney Run Preservation Association v. County Commissioners of Carroll County, Maryland*, the seminal case addressing the scope of the CWA's permit shield, the Fourth Circuit held that a permit holder's discharge of a pollutant not specifically listed in its permit does not violate the CWA as long as:

> (1) the permit holder complies with the express terms of the permit and with the Clean Water Act's disclosure requirements and (2) the permit holder does not make a discharge of pollutants that was not within the reasonable contemplation of the permitting authority at the time the permit was granted.

*Piney Run*, 268 F.3d at 259.  Finding that the CWA's statutory shield provision was ambiguous, the *Piney Run* court deferred to the EPA's reasonable

interpretation: a permit holder is shielded from liability for discharging pollutants not listed in its permit if it adequately disclosed the nature of its discharges during the application process and the pollutants being discharged were within the reasonable contemplation of the permitting authority at the time the permit was issued. *Id.* at 267-68; *see In Re Ketchikan Pulp Co.*, 7 E.A.D. 605, 621 (EAB 1998) ("[W]hen the permittee has made adequate disclosures during the application process regarding the nature of its discharges, unlisted pollutants may be considered to be within the scope of an NPDES permit, even though the permit does not expressly mention those pollutants. The converse is also true: where the discharger has not adequately disclosed the nature of its discharges to permit authorities, and as a result thereof the permit authorities are unaware that unlisted pollutants are being discharged, the discharge of unlisted pollutants has been held to be outside the scope of the permit.").

In this case, A&G contends that it has satisfied both prongs identified in *Piney Run* and should be shielded from liability for discharging selenium. As to the first prong, A&G asserts that it complied with the CWA's disclosure requirements, which mandate disclosure of pollutants that the applicant "knows or has reason to believe . . . will be present in the discharges from any outfall." 40 C.F.R. §§ 122.21(k)(5)(iii) (2012). According to A&G, it did not know or have reason to believe that it would discharge selenium, so it was not required to

disclose selenium in its application.  A&G also argues that it adequately disclosed the nature and source of its discharges — bituminous coal mining — which it says is sufficient to invoke the permit shield.  As to the second prong, A&G contends that because DMME was generally aware of elevated selenium levels in the geographic area, the possibility of selenium discharge from the Kelly Branch Surface Mine would have been within DMME's reasonable contemplation when it issued the VA/NPDES permit.

The plaintiffs' view of the permit shield is much more straightforward. According to them, a permittee can only invoke the permit shield as to an unlisted pollutant if it actually disclosed the unlisted pollutant in its permit application.

No court has yet addressed A&G's precise argument that the permit shield applies where a permittee did not disclose an unlisted pollutant because the permittee did not have reason to know that it would discharge the pollutant.  After carefully considering the court of appeals' decision in *Piney Run*, as well as the EPA's reasoning in *Ketchikan Pulp*, I hold that a permittee must have actually disclosed a pollutant in its permit application in order to avail itself of the permit shield as to that pollutant.

The major flaw in A&G's position is that it hinges upon the applicant's knowledge of pollutants at the time of the application.  As the *Piney Run* and *Ketchikan Pulp* decisions make clear, however, the crucial factor for application of

the permit shield is whether the *permitting agency* contemplated the discharge and chose not to include an effluent limit for the pollutant in the permit.  The *Piney Run* court emphasized,

> Because the permitting scheme is dependent on the permitting authority being able to judge whether the discharge of a particular pollutant constitutes a significant threat to the environment, discharges not within the reasonable contemplation of the permitting authority during the permit application process . . . do not come within the protection of the permit shield.

*Piney Run*, 268 F.3d at 268.  Similarly, the Environmental Appeals Board indicated that "the disclosures made by permit applicants about their operations and wastestreams are critical to the success of the overall permitting scheme" because a permit's effluent limitations are based primarily on information provided by the applicant.  *Ketchikan Pulp*, 7 E.A.D. at 619.

In this case, it is undisputed that A&G did not know or have reason to believe that it would discharge selenium from its mine site.  Even if A&G dutifully complied with the permit application requirements, the evidence simply does not support a conclusion that DMME contemplated what A&G did not.  I find unpersuasive A&G's argument that it adequately disclosed the nature of its discharges by informing the DMME that it would perform bituminous coal mining operations.   The record contains no evidence that DMME reasonably contemplated the discharge of selenium simply because it knew that the Kelly Branch Surface Mine was a bituminous coal

mine.  Indeed, A&G claims that it had no reason to know it would discharge selenium, despite the fact that it clearly knew it would operate a bituminous coal mine.

I am also unpersuaded by A&G's argument that the discharge of selenium from the Kelly Branch Mine Site was within DMME's reasonable contemplation because DMME understood that there were elevated levels of selenium in the general area. The Environmental Appeals Board rejected a similar argument in *Ketchikan Pulp*. There, the permittee argued that its permit implicitly allowed discharge of cooking acid because "the Agency was generally aware that spills occur in pulp mills." *Ketchikan Pulp*, 7 E.A.D. at 629-30.  The Environmental Appeals Board found that such general knowledge was insufficient to apprise the permitting authority of the possibility that the permittee would discharge cooking acid.  *Id.*  I likewise find that DMME's general knowledge of the presence of selenium in the geographic area is insufficient to satisfy the requirements for invoking the permit shield.  A&G has offered no evidence that DMME anticipated a discharge of selenium from this particular mine.  Because the discharge of selenium was not within the reasonable contemplation of DMME when it issued the VA/NPDES permit, the permit shield does not apply.

A&G does not dispute that it has been discharging selenium from the Kelly Branch Mine Site, nor does it contest the fact that its permit contains no explicit authorization to discharge selenium.  Because the permit shield does not apply here, A&G's selenium discharges are unlawful discharges of pollutants in violation of the

CWA.  Based on the undisputed facts, the plaintiffs are entitled to summary judgment on the issue of liability under the CWA.

At oral argument, counsel for the plaintiffs represented that the court could provide the plaintiffs full relief based solely upon the CWA claim.  Accordingly, because I hold that A&G has violated the CWA as a matter of law, I need not rule on the merits of the plaintiffs' SMCRA claim.

A&G has objected to several of the plaintiffs' proposed remedies.  The parties have submitted briefs regarding appropriate remedies.  The plaintiffs request that I require A&G to apply expeditiously to DMME for a permit modification to address selenium discharges, and to submit all the selenium test results in the record in this case along with its request for modification.  The plaintiffs further request that I wait to determine any civil penalties until after the permit modification process is complete or until one of the parties moves to establish a modified schedule.  The plaintiffs also ask me to require A&G to submit quarterly status reports to the court pending completion of the modification process, to perform daily tests for selenium from both its outfalls and the water column of the tributary streams immediately downstream from the ponds' discharges, and to monthly submit those test results to the plaintiffs and to DMME for consideration during the permit modification process.  The plaintiffs contemplate that I may use the results of the testing, quarterly status reports, and sampling data to assess the seriousness of A&G's violations for the purpose of determining civil penalties.

I find that the plaintiffs' proposed interim remedies are reasonable and appropriate, and that I have the authority to order them.  Therefore, I will grant the relief requested by the plaintiffs.


V

For the reasons stated, it is **ORDERED** as follows:

1. Defendant A&G Coal Corporation's Motion to Supplement Evidence in Support of its Motion for Summary Judgment (ECF No. 70) is DENIED;

2. Defendant A&G Coal Corporation's Motion for Summary Judgment (ECF No. 51) is DENIED;

3. Plaintiffs' Motion for Summary Judgment (ECF No. 54) is GRANTED;

4. Within thirty (30) days after the date of entry of this Order, A&G Coal Corporation must apply to the Virginia Department of Mines, Minerals, and Energy ("DMME") for a modification of its Virginia National Pollution Discharge Elimination System permit to address its selenium discharges;

5. A&G Coal Corporation must submit to DMME all selenium test results that are part of the record in this case along with its request for permit modification;

6.   The parties must submit quarterly status reports to the court pending submission and consideration by DMME of the permit modification application;

7.   Beginning seven (7) days after the date of entry of this Order, A&G Coal Corporation must perform daily tests for selenium from its outfalls and from the water column of the tributary streams immediately downstream of Pond 08A and Pond 11A;

8.   A&G Coal Corporation must submit the results of its daily testing monthly to the plaintiffs and DMME; and

9.   The court shall retain jurisdiction in this case in order to determine any further relief pending submission and any determination of A&G Coal Corporation's permit modification application.


ENTER:   July 22, 2013

/s/  James P. Jones
United States District Judge

-19-