IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

SOUTHERN APPALACHIAN
MOUNTAIN STEWARDS, SIERRA
CLUB, and APPALACHIAN VOICES,

    Plaintiffs,

v.                            CIVIL ACTION NO. 2:12cv9

A & G COAL CORPORATION,

    Defendant.

## CONSENT DECREE

### I.     RECITALS

1. On May 3, 2012, Plaintiffs Southern Appalachian Mountain Stewards, Appalachian Voices, and Sierra Club (collectively "Plaintiffs") filed a Complaint for Declaratory and Injunctive Relief and for Civil Penalties in this civil action against Defendant A&G Coal Corporation ("Defendant"). ECF No. 1.

2. The Complaint alleged that Defendant was discharging the toxic pollutant selenium into waters of the United States without a permit authorizing such discharges issued pursuant to Section 402 of the federal Clean Water Act ("CWA") and the National Pollutant Discharge Elimination System ("NPDES"). The Complaint further alleged that Defendant's discharges of selenium in concentrations exceeding those authorized by Defendant's SMCRA Coal Surface Mining Operation ("CSMO") permit 1102052 constituted a violation of certain performance standards under the Surface Mining Control and Reclamation Act of 1977 ("SMCRA").

3. On July 22, 2013, the Court issued a Memorandum Opinion and Order granting Plaintiffs summary judgment on their First Claim for Relief and enjoining Defendant to seek modification of its CSMO/NPDES permit, but reserving the resolution of Plaintiffs' claims for civil penalties. ECF No. 77. Such claims for civil penalties are pending before the Court.

4. The Parties, by mutual agreement, intend this Consent Decree to resolve all pending issues in this action, including Plaintiffs' claim for Civil Penalties and any other claim raised in Plaintiffs' Complaint for Declaratory and Injunctive Relief and for Civil Penalties.

5. The Parties recognize, and the Court by entering this Consent Decree finds, that the Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the Parties, and that this Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II. JURISDICTION AND VENUE

6. For purposes of this Consent Decree, the Parties agree that this Court has jurisdiction over the Parties and over the subject matter of this action pursuant to 28 U.S.C. § 1311 (federal question jurisdiction), 33 U.S.C. § 1365 (CWA citizen suit provision), and 30 U.S.C. § 1270 (SMCRA citizen suit provision).

7. Venue is proper in the Western District of Virginia pursuant to 28 U.S.C. §§ 1391(b) and (c), because it is the judicial district in which Defendant is located, resides, and/or does business, and/or in which the violations alleged in the Complaint occurred; pursuant to 33 U.S.C. § 1365(c)(1), because the sources of the alleged CWA violations are located in this

judicial district; and pursuant to 30 U.S.C. § 1270(c), because the coal mining operations complained of are located in this judicial district.

8. For purposes of this Consent Decree, and any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and consents to venue in this judicial district.

### III. APPLICABILITY

9. The provisions of this Consent Decree apply to and are binding upon Plaintiffs and those with authority to act on their behalf, including, but not limited to, their officers, directors, and staff; upon Defendant and any of its respective successors and/or assigns; and upon other persons or entities otherwise bound by law.

10. No transfer of ownership or operation of any facility shall relieve Defendant of its obligation under this Consent Decree.

11. Defendant shall indemnify, defend and hold harmless the Plaintiffs and its trustees, officers, directors, employees and agents, for any claims, actions, and/or liabilities of any kind arising out of or related to Plaintiffs' activities undertaken pursuant to this Consent Decree.

12. Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties include direct responsibility for compliance with any provision of this Consent Decree.

### IV. DEFINITIONS

13. Terms used in this Consent Decree that are defined in the CWA, SMCRA, or in regulations issued pursuant thereto shall have the meanings assigned to them therein, unless

otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

  a. "Complaint" shall mean Plaintiffs' Complaint for Declaratory and Injunctive Relief and for Civil Penalties filed in this action on May 3, 2012;

  b. "Consent Decree" or "Decree" shall mean this Consent Decree and any appendices and exhibits attached hereto;

  c. "CWA" shall mean the federal Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*;

  d. "Defendant" shall mean A&G Coal Corporation;

  e. "Parties" shall mean Plaintiffs and Defendant;

  f. "Permit" shall mean VA/NPDES Permit No. 0082052;

  g. "Plaintiffs" shall mean Southern Appalachian Mountain Stewards, Appalachian Voices, and Sierra Club;

  h. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral;

  i. "SEP" shall mean a Supplemental Environmental Project, which is an environmentally beneficial project or activity that is not required by law, but that a defendant agrees to undertake as part of the settlement of an enforcement action;

  j. "DMME" shall mean the Virginia Department of Mines, Minerals and Energy;

  k. "VA/NPDES permit" shall mean a Virginia/National Pollutant Discharge Elimination System permit issued by DMME pursuant to Section 402 of the CWA.

## V. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

14. By mutual agreement and in order to substantially mitigate the payment of a civil penalty, Defendant shall pay a total of $252,000.00 in order to fund three Supplemental Environmental Projects ("SEPs") as described herein. The projects shall satisfy the requirements of EPA policy, as articulated in the U.S. Environmental Protection Agency Supplemental Environmental Projects Policy 2015 Update ("Policy"). As articulated in that Policy, the projects shall improve, protect, or reduce risks to public health or the environment, and shall consist entirely of acts that the Defendant is not otherwise legally obligated to perform. Each project has undergone preliminary review and cost estimation by the Virginia DMME, which has determined that the projects are beneficial to the public but are not eligible for Abandoned Mine Land funding or other public funding. The Upper Tennessee River Roundtable ("UTRR") is a non-party, 501(c)(3) non-profit entity that performs watershed improvement projects in the area. UTRR has completed reclamation and public benefit projects in the region in the past and has the appropriate experience and mission to administer the projects. The cost for each project was determined by DMME and/or the Upper Tennessee River Roundtable and not by the Parties to this action. The three projects shall be:

   a. Complete reclamation of a collapsing wooden coal tipple site along the North Fork of Powell River, off Route 606 and approximately 1.8 miles North of Pennington Gap, Virginia. This site is in need of reclamation but was used after August 3, 1977 and is ineligible for AML funding. Complete reclamation will reduce or eliminate pollutant discharges from the tipple and surrounding site into the North Fork of Powell River. Cost: $90,000, including reclamation costs and administrative costs.

b. Acquisition and improvement of a mining sediment control pond for recreational use by the Town of Appalachia, Virginia or other public entity. The pond is currently permitted pursuant to SMCRA but could upon improvement be released in accordance with State and Federal law. The Town of Appalachia is interested in acquisition of the area and its development as a public fishing area. Release and transfer of the pond will reduce or eliminate current discharges and provide a public environmental asset to the Town. It is located off Rt. 68 (Exeter Road), 1 mile southwest of Appalachia, Virginia and within the Powell River watershed. Cost: $90,000, including reclamation costs and administrative costs.

c. Complete reclamation of an abandoned steel loadout site near Blackwood, Virginia. The loadout is directly adjacent to old Rt. 23 and is also directly adjacent to the Powell River. This site was also used after August 3, 1977 is not eligible for public Abandoned Mine Land funding. Complete reclamation will reduce or eliminate pollutant discharges from the loadout into the Powell River. Cost: $72,000, including reclamation costs and administrative costs.

15. The projects, cumulatively and individually, will reduce surface water pollution and thereby improve the environment and reduce risks to the environment and to public health. The projects will primarily benefit the public and the environment, not the Defendant in this action. (Policy, III.A). The reclamation of the tipple and loadout will reduce or stop pollution of the waters of the United States at the source of the pollution, (Policy, II.C), and will reduce pollution in areas disproportionately burdened by pollutant exposure (See Policy, II.B). The development of the fishing area will further reduce pollution and will

provide public health benefits. The projects satisfy the applicable criteria as projects that will prevent pollution, reduce pollution, and/or restore and protect the environment. (See Policy V.B-D).

16. In this action, Plaintiffs' claims involved water pollution in the Powell River watershed, pollution that resulted from coal mining activity in Southwest Virginia. Each of the three SEPs will either reduce pollution and/or provide public heath benefits at a site of historic or recent coal mining, and all such sites are located within the Powell River watershed. As such, the SEPs are in the same watershed and same geographic area, and will reduce the adverse impact to public health and/or the environment to which the violations at issue contribute. The projects therefore exhibit a nexus with the violations at issue (Policy, IV.A).

17. A&G shall commit $252,000 to the design and construction of the three SEPs described herein and $28,000 to the payment of civil penalties, as set forth below in Section IX. Such expenditure by Defendant shall be above and beyond any costs of lawfully required reclamation. Within ninety days of the entry of this Consent Decree, Defendant shall place funds in the amount of $252,000 into an account held and designated by the Upper River Tennessee River Roundtable. Within 120 days of the entry of this Consent Decree, Defendant shall transfer title, or shall cause title to be transferred, to the real property that contains the pond identified in Paragraph 14(b) above (further identified as Wise County tax parcel 014553). Such transfer shall convey title to the Town of Appalachia or other appropriate public or non-profit entity, as designated in writing by UTRR. If, due to any factor beyond the control of A&G Coal Corporation, the title cannot be transferred to the Town of Appalachia or other appropriate entity, A&G Coal Corporation shall seek modification of this decree with a SEP of comparable expenditure.

{C3013230.1}                                                      7

Case 2:12-cv-00009-JPJ-PMS   Document 148   Filed 01/11/16   Page 7 of 16   Pageid#: 1182

18. Defendant's Certification: In accordance with EPA Policy, A&G Coal Corporation certifies that:

  a. It is not a party to any open federal financial assistance transaction that is funding or could fund the same activity as the SEP described in paragraph 14; and

  b. It has inquired of the SEP recipient and SEP implementer, the Upper Tennessee River Roundtable, whether it is a party to an open federal financial assistance transaction that is funding or could fund the same activity as the SEP and has been informed by the Upper Tennessee River Roundtable that it is not a party to such a transaction.

  c. A&G Coal shall retain full responsibility to fund the SEPs as described herein by paying the amounts specified to UTRR.

19. With regard to the SEPs, Defendant further certifies the truth and accuracy of each of the following:

  a. That all cost information provided to the EPA in connection with the EPA's approval of the SEP is complete and accurate and that Defendant in good faith estimates that the cost to implement the SEPs is $252,000;

  b. That, as of the date of executing this Decree, Defendant is not required to perform or develop the SEPs by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c. That the SEP is not a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d. That Defendant has not received and will not receive credit for the SEP in any other enforcement action;

e. That Defendant will not receive reimbursement for any portion of the SEP from another person or entity;

f. That for federal income tax purposes, Defendant agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

g. Defendant agrees that whenever it publicizes the SEPs or the results of any of the SEPs, it will state in a prominent manner that the project is being undertaken as part of the settlement of an enforcement action.

h. Defendant expects completion of the projects prior to December 31, 2016 and shall submit a final report to Plaintiffs and to the U.S. Environmental Protection Agency.

## VI. COMPLIANCE REQUIREMENTS

20. The Parties acknowledge that Defendant applied for a modification of VA/NPDES permit 0082052 during the pendency of this civil action. The parties anticipate that the reissued Permit will impose effluent limits on selenium at Outlet 008 and Outlet 011. In addition, the draft reissued Permit contains a compliance schedule through which Defendant is required to achieve compliance with the selenium effluent limits. In the interim, Defendant is required by this Court to monitor the outfalls daily and report selenium concentrations to

DMME. The daily monitoring requirement shall cease upon final issuance of the modified VA/NPDES permit 0082052, or earlier if by Order of this Court.

21. Plaintiffs, by entering this Consent Decree, do not release any claims for future violations of VA/NPDES permit 0082052 or any other VA/NPDES permit held by Defendant.

## VII. FORCE MAJEURE

22. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the reasonable control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, which delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercises "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

23. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to Plaintiffs within five (5) business days of when Defendant first knew that the event might cause a delay. Within fourteen (14) days thereafter, Defendant shall provide in writing to Plaintiffs an explanation of the reasons for the delay, the anticipated duration of the delay, and the actions taken or to be taken to prevent or minimize the delay.

24. If Plaintiffs agree that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by Plaintiffs for such time as is necessary to complete those obligations. An extension of the time for performance of the

obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. Plaintiffs shall notify Defendant in writing within five (5) business days of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

25. If Plaintiffs do not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, Plaintiffs will notify Defendant in writing of their decision with five (5) days of their receipt of the Force Majeure claim by Defendant. Any dispute between the Parties over a Force Majeure claim may be resolved by the Court.

## VIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

26. This Consent Decree resolves the civil claims of Plaintiffs for the violations alleged in the Complaint in the instant action through the Effective Date of this Decree.

27. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## IX. CIVIL PENALTY

28. Defendant shall pay a civil penalty in the amount of $28,000.00 to the United States as set forth in Paragraph 29 below. Together with the three Supplemental Environmental Projects to be funded as set forth in Section V, the payment of this civil penalty is made in settlement of all of Plaintiffs' claims in this action under the CWA and SMCRA for violations occurring prior to the Effective Date of this Consent Decree.

29. Defendant shall pay the civil penalty due to the United States Treasury within thirty (30) days of the Effective Date of this Decree. That payment shall be made by check or money order to the Treasurer of the United States and should be sent to the following address: Debt Collection Specialist, Environment and Natural Resources Division, Executive Office, P.O. Box 7754, Ben Franklin Station, Washington, D.C. 20044-7754. The check or money order shall reference *Southern Appalachian Mountain Stewards, et al., v. A&G Coal*

*Corporation,* Civil Action No. 2:12cv0009, and payment shall be considered paid upon mailing or direct delivery to the specified address. A copy of the check/money order and cover letter shall be sent to Plaintiffs at the time payment is made and shall state that payment is being made pursuant to this Decree.

30. The sum set forth in Paragraph 28 resolves all claims for civil penalties under 33 U.S.C. § 1365 arising from any violations alleged in Plaintiffs' Complaint that have occurred or may occur up to the Effective Date of this Consent Decree.

## X. COSTS AND FEES

31. Defendant shall pay reasonable costs and attorneys' fees, including litigation costs incurred by Plaintiffs in conjunction with this civil action through the Effective Date of this Consent Decree, in accordance with the fee-shifting provisions of the CWA and SMCRA. Those costs and fees not already paid by Defendant pursuant to this Court's prior Orders total $27,982.50. Of that amount, $27,611.50 is for Plaintiffs' reasonable attorneys' fees, allocated as follows:

   a. $ 23,691.50 for Isak Howell's 96.7 hours at the reasonable rate of $245.00 per hour; and

   b. $ 3,920.00 for Joseph Lovett's 9.8 hours at the reasonable rate of $400.00 per hour.

In addition to attorneys' fees, Plaintiffs' costs not already paid by Defendant are $371.00.

32. No later than thirty (30) days from the Effective Date of this Consent Decree, Defendant shall deliver to Plaintiffs' counsel a check for $27,982.50 made payable to Appalachian Mountain Advocates. Appalachian Mountain Advocates shall be wholly responsible for the proper distribution of any portions of the delivered sum to any and all attorneys, experts, or other entities that may be entitled thereto. The sum delivered under this paragraph shall be a complete settlement of Plaintiffs' claims for costs and fees incurred up to the Effective Date of this Consent Decree, and thereafter for responding to possible comments

on this Decree by the U.S. Department of Justice.

33. Plaintiffs retain the right to seek costs, including attorneys' fees and expert witness fees that accrue after the Effective Date of this Consent Decree. The Parties agree that the Court's determination of whether such an award of costs and fees is appropriate shall be governed by 33 U.S.C. § 1365(d).

## XI. NOTICES

34. Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

<u>To Plaintiffs:</u>

Isak Howell
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901

<u>To Defendant:</u>

Dustin Deane
A&G Coal Corporation
James C. Justice Companies, Inc. and Its Affiliates
302 S. Jefferson St.
Roanoke, VA 24011

35. Either Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

36. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII. EFFECTIVE DATE

37. The Effective Date of this Consent Decree shall be the date upon which this Decree is entered by the Court or a motion to enter this Decree is granted, whichever

occurs first, as recorded on the Court's docket.

## XIII. RETENTION OF JURISDICTION

38. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section XIV ("Modification") or effectuating or enforcing compliance with the terms of this Decree.

39. Plaintiffs and Defendant reserve all legal and equitable rights and defenses available to them to enforce or defend the provisions of this Consent Decree.

## XIV. MODIFICATION

40. The terms of this Consent Decree, including the attached exhibits, may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

## XV. TERMINATION

41. If compliance is achieved as set forth herein, the Parties agree that the Consent Decree shall terminate and agree to submit a joint motion to terminate the Consent Decree within thirty (30) days after Defendant has notified Plaintiffs that compliance was demonstrated through completion of the three Supplemental Environmental Projects described herein.

## XVI. SIGNATORIES/SERVICE

42. Each undersigned representative of Plaintiffs and Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

43. The Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

## XVII. INTEGRATION

44. This Consent Decree, including the exhibits, constitutes the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XVIII. FINAL JUDGMENT

45. Upon approval and entry of this Consent Decree by the Court, this Decree shall constitute a final judgment of the Court as to Plaintiffs and Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Rules 54 and 58 of the Federal Rules of Civil Procedure.

46. The Clerk shall administratively close this case.

ENTER:

/s/ James P. Jones

UNITED STATES DISTRICT JUDGE

For the Plaintiffs Southern Appalachian Mountain Stewards, Appalachian Voices, and Sierra Club:

/s/ Isak Howell                    Dated: 10/28/2015
Isak J. Howell, VBN 75011
Joseph M. Lovett, WVBN 6926 (admitted *Pro Hac Vice*)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
Phone: (304) 645-9006

For the Defendant A&G Coal Corporation:


/s/ Dustin Deane                                        Dated: 10/28/2015
Dustin M. Deane, Esq. VBN 83804
James C. Justice Companies, Inc. and Affiliates
302 S. Jefferson Street
Roanoke, Virginia 24011
Telephone (540) 776-7890
Facsimile (540) 301-5919